IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-00795-PSF-BNB

EDWARD D. COLLIE,

Petitioner,

v.

AL ESTEP, Warden of Fort Lyon Correctional Facility, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

Respondents.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** (the "Application"), filed by Edward Collie (the "petitioner") on April 26, 2006 [Doc. #2].  The respondents filed an Answer on June 21, 2006 [Doc. #11].  For the following reasons, I respectfully RECOMMEND that the Application be DENIED.

## I.  THE LAW

This Court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  An application cannot be granted unless it appears that the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b)(1).

If a petitioner exhausts his available state remedies, his application may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

1

of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

Factual determinations made by the state court are presumed correct unless rebutted by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1).

Generally, if a petitioner fails to exhaust available state remedies, a federal court should

dismiss the application without prejudice so that the state remedies may be pursued.  Demarest v.

Price, 130 F.3d 922, 939 (10th Cir. 1997).  The federal court, however, should first consider

whether the petitioner would be able to raise the unexhausted claims in the state court.  Id.

If the state court to which the petitioner would be required to present his claims in order

to meet the exhaustion requirement would now find the claims procedurally barred, the

petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief.

Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).  The federal court may not consider issues

raised in a habeas corpus petition that have been defaulted in state court on an independent and

adequate procedural ground unless the petitioner can show cause for the default and actual

prejudice as a result of the alleged violation of federal law or can demonstrate that the failure to

consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. 722,

750 (1991).  The determination of cause, prejudice, and fundamental miscarriage of justice are

matters of federal law.  Demarest, 130 F.3d at 941.

## II.  BACKGROUND

The background facts of this case are described by the Colorado Court of Appeals as

follows:

> In 1994 and 1995, defendant induced homeowners to enter into
> contracts with his son's landscaping business, a corporation. After
> collecting an initial deposit and, in most instances, a progress
> payment upon completion of soil preparation work, the remainder
> of the work was never completed. All the checks were payable to
> the son, his wife, or the corporation.

> When the business failed to complete the work in a timely fashion and refused to refund any of the payments received, defendant was charged with the offenses at issue here.

People v. Collie, 995 P.2d 765, 768 (Colo. App. 1999).[1]

> Defendant was charged with one count of theft of fifteen thousand dollars or more pursuant to § 18-4-401, C.R.S. 2004, a class three felony, and one count of conspiracy to commit theft pursuant to § 18-2-201, C.R.S. 2004, a class four felony. The complaint and information against defendant was then amended to add four habitual offender counts, including three prior felony convictions for theft and one felony conviction of fraud by check. Following a jury trial, defendant was convicted on the theft and conspiracy counts. He pleaded guilty to the four habitual offender counts and was sentenced to forty-eight years in the Department of Corrections.

*Answer,* Exhibit P, p. 1.

The Colorado Court of Appeals affirmed the petitioner's conviction and sentence. Collie, 995 P.2d at 775. The petitioner filed a Petition for Writ of Certiorari, which was denied on March 11, 1996. *Answer,* Exhibits F and G.

On June 30, 2000, the petitioner filed a *pro se* motion for postconviction relief alleging ineffective assistance of counsel and requesting a proportionality review of his sentence. Id. at Exhibit H, ¶ 1; Exhibit P, pp. 1-2. On January 28, 2002, the petitioner, through counsel, filed an amended motion for postconviction relief alleging ineffective assistance of counsel. Id. at Exhibit H. The postconviction court held a hearing on August 28, 2003. Id. at opening paragraph. The court rejected the petitioner's claim of ineffective assistance as successive to his direct appeal. Id.

---

[1]The state appellate court's decision affirming the petitioner's conviction and sentence is found in Appendix E of the Answer. However, several pages are missing from Appendix E. Therefore, I cite to the appellate court's published opinion instead of Appendix E.

at Exhibit I, p. 4.  The court also conducted a proportionality review of the petitioner's sentence and reduced it from 48 years to 20 years.  Id. at pp. 6-7.

Both parties appealed the postconviction court's decision.  Id. at Exhibit P.  The appellate court affirmed the postconviction court's ruling on the ineffective assistance claim and vacated the order reducing the petitioner's sentence from 48 years to 20 years.  Id.  The supreme court denied the petitioner's request for certiorari review on October 17, 2005.  Id. at Exhibit R.  The Mandate issued on October 21, 2005.  Id. at Exhibit S.

The petitioner filed his Application on April 26, 2006.  The Application alleges the following claims:

(1)   The pretrial judge, Judge Curry, and petitioner's trial counsel suffered from a conflict of interest that resulted in structural error, and assuming that structural did not result, the district court's pretrial evidentiary rulings constituted reversible error;

(2)   The trial judge, Judge Lawrence, erroneously denied the petitioner's motion to dismiss his trial counsel;

(3)   The prosecution failed to prove the commission of a crime beyond a reasonable doubt;

(4)   The state committed prosecutorial misconduct during closing argument;

(5)   The jury was erroneously instructed on the elements of theft, and trial counsel was ineffective for failing to object to the instruction; and

(6)   The petitioner's 48 year sentence violates the Eighth Amendment's guarantee against cruel and unusual punishment.

## III.  ANALYSIS

### A.  Claim One

In Claim One, the petitioner argues that a conflict between his counsel and the pretrial judge resulted in structural error. *Application*, pp. 5-5C.  He further argues that, assuming *arguendo* structural error was not present, the district court's pretrial rulings were in violation of the Constitution. Id. at pp. 5D-5F.

The respondents assert that the petitioner exhausted the former (structural error) argument in the state courts but that the latter (constitutional) argument "has not previously been raised as a matter of constitutional law; nor is it fairly raised in [the petitioner's] petition." *Answer*, p. 18.  To the contrary, the petitioner raised the latter argument to the state appellate court, the state supreme court, and this Court as a constitutional claim.  *Answer*, Exhibit B, pp. 9-13; Exhibit F, pp. 8-10; *Application*, pp. 5D-5F.  Therefore, Claim One is exhausted as to both the structural error argument and the constitutional error argument,[2] and the Application can be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

### 1.  Structural Error Argument

The Tenth Circuit Court of Appeals has described structural error as follows:

> [Structural error is] a defect in the constitution of the trial mechanism, which defies analysis by harmless error standards.

---

[2]As noted below, the petitioner has not exhausted one of the bases for his structural error argument and one of the bases for his constitutional error argument.

Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).  Such errors affect the entire conduct of the trial from beginning to end and deprive the defendant of basic protections, without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.  Id. at 310, 111 S.Ct. 1246 (quoting Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)).  Errors of this type are so intrinsically harmful as to require automatic reversal without regard to their effect on the outcome.  Neder v. United States, 527 U.S. 1, ----, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999).  If a criminal proceeding includes such an error, the resulting punishment may not be regarded as fundamentally fair.  Rose, 478 U.S. at 577-78, 106 S.Ct. 3101.

Supreme Court decisions have found structural error only in a very limited class of cases,  Neder, 527 U.S. at ----, 119 S.Ct. at 1833. (quoting Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)), including those involving: (1) the total deprivation of  the right to counsel at trial, see Gideon v. Wainwright, 372 U.S. 335, 344-45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); (2) a biased presiding judge, see Tumey v. Ohio, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927); (3) the systematic exclusion of members of the defendant's own race from a grand jury, see Vasquez v. Hillery, 474 U.S. 254, 262-63, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); (4) the denial of the right to self-representation at trial, see McKaskle v. Wiggins, 465 U.S. 168, 174, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); (5) the denial of the right to a public trial, see Waller v. Georgia, 467 U.S. 39, 49-50, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); (6) the denial of the right to have a district judge (rather than a magistrate judge) preside over jury selection, see Gomez v. United States, 490 U.S. 858, 876, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989); and (7) a defective reasonable doubt instruction, see Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).  In Rose, the Supreme Court described these kinds of errors as the exception rather than the rule.  "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."  Rose, 478 U.S. at 579, 106 S.Ct. 3101.

United States v. Pearson, 203 F.3d 1243, 1260-61 (10th Cir. 2000).

The petitioner asserts the following background facts to support his claim for structural error: (1) his criminal case was assigned to Judge Curry, who appointed David Rolfe as defense counsel; (2) six months later, in July 1996, Judge Curry filed a grievance against Mr. Rolfe based on his behavior in an unrelated case; (3) neither party was permitted to divulge the grievance proceeding until April 11, 1997; (4) Judge Curry denied several pretrial motions filed by the petitioner; (5) Judge Curry recused himself from the case on April 11, 1997, based on the grievance he filed against Mr. Rolfe; (6) the case was transferred to Judge Lawrence, who presided over the trial; and (7) Judge Lawrence applied all of Judge Curry's pretrial rulings without an independent review.  *Answer*, Exhibit F, p. 4.

The petitioner argues that a structural defect existed in his trial because Judge Lawrence applied the "tainted" pretrial rulings of Judge Curry without an independent review of the pretrial proceedings and rulings.[3]  The state appellate court addressed the issue as follows:

> Defendant first contends that structural error occurred when the original trial judge filed a grievance against defendant's attorney in an unrelated matter and subsequently ruled on a number of pre-trial motions, which rulings, after the judge later disqualified himself, were adopted without independent review by the new judge. We disagree.

---

[3]In his Application, the petitioner also argues that structural error existed because Mr. Rolfe, instead of acting as the petitioner's advocate, "became obsessed with fear of exacerbating an already very fragile situation" and "refused to actively argue the merits and substance of the pre-trial motions he submitted." *Application*, pp. 5A-B.  The petitioner did not exhaust this argument in the state courts. In his brief to the state appellate court, the petitioner summarily stated that "defense counsel's arguable conflict between his self-interest and his client's interests existed throughout the proceedings on pre-trial motions." *Answer*, Exhibit B, p. 8.  The petitioner did not present to the state supreme court any argument that structural error existed on the basis of defense counsel's alleged inability to advocate for the petitioner.  His structural error argument was based solely on Judge Lawrence's application of Judge Curry's pretrial rulings the trial. Id. at Exhibit F, pp. 6-8.  Therefore, the petitioner's claim of structural error based on defense counsel's inability to advocate for the petitioner has not been exhausted in the state courts.  Moreover, for the reasons set forth in my analysis of Claim Three, any claim of structural error based on Mr. Rolfe's inability to advocate for the petitioner is procedurally barred and improper for habeas review.

7

Not all errors of constitutional significance require reversal of a defendant's conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Most such errors are properly susceptible to harmless error analysis, permitting an appellate court to affirm the conviction if it can say that the error did not contribute to the jury's determination of guilt beyond a reasonable doubt. Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Key v. People, 865 P.2d 822 (Colo.1994). Only those errors that pervasively prejudice the entire course of the proceedings so as to render the verdict in essence no verdict at all are structural defects that mandate reversal. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); Key v. People, supra.

Observing that pre-trial rulings dictate the "procedure and content" of the subsequent proceedings, defendant argues that the effect of pre-trial rulings by a purportedly biased judge are such a structural defect mandating reversal. We are not persuaded.

No Colorado appellate court has previously addressed this issue. However, we note that only a few types of very serious errors have been held to be structural defects mandating reversal. They include: complete deprivation of the right to counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); trial before a biased judge, Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); and improper jury instructions that usurp the jury's role of determining guilt on every material element of the charged offense, People v. Vance, 933 P.2d 576 (Colo.1997); see People v. Price, 969 P.2d 766 (Colo. App.1998).

The essence of a structural defect is that it must, *in every case in which it arises*, render appellate review meaningless because there is no proper basis on which the judgment might be affirmed. Sullivan v. Louisiana, supra; Sherman v. Smith, 89 F.3d 1134 (4th Cir.1996).

Defendant has failed to show that non-dispositive pre-trial rulings, regardless of their subject matter, made by a judge who later disqualifies himself from presiding over the remainder of a case, renders the resulting jury verdict in essence no verdict at all or that review of such orders for abuse of discretion or harmless error would be meaningless.

8

> Thus, while the better practice would have been for the judge to disqualify himself immediately upon filing the grievance against defendant's attorney, we conclude that applying the original judge's pre-trial rulings in the remainder of the proceedings, without an independent review by the replacement judge, did not constitute structural error. Cf. Floyd v. Coors Brewing Co., 952 P.2d 797 (Colo. App.1997), rev'd on other grounds 978 P.2d 663, 1999 WL 9769 (Colo.1999).  This is particularly true here because, as analyzed below, we may consider on appellate review the propriety of the challenged rulings.

Collie, 995 P.2d at 769 (emphasis in original).

As the state appellate court acknowledged, a very limited category of errors have been held to be structural defects.  The Supreme Court has never held that a conflict of interest between a criminal defendant's counsel and the pretrial judge constitutes a structural error.  Nor does the existing case law suggest the existence of a structural error under these circumstances.

The Supreme Court has found structural error relating to judicial bias only under extreme circumstances, such as in Tumey v. Ohio, 273 U.S. 510.  In Tumey, the Court considered a state procedure under which judges were paid for presiding over a case only if the defendant was found guilty and costs assessed against him.  The Court stated:

> All questions of judicial qualification may not involve constitutional validity.  Thus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion.  But it certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case.

Tumey, 273 U.S at 523 (internal citations omitted).

Judge Lawrence's application of Judge Curry's pretrial rulings is manifestly different from the constitutional violations found by the Supreme Court to constitute structural error.  The pretrial rulings in this case did not *necessarily* render the trial fundamentally unfair, and each

pretrial ruling can be examined individually for error.  In other words, the rulings are not so "intrinsically harmful as to require automatic reversal without regard to their effect on the outcome" of the trial.  See Neder 527 U.S. at 7.

I find that the state appellate court's determination that no structural error existed is consistent with clearly established federal law and its decision was based on a reasonable determination of the facts presented.  I find no basis upon which to grant the petitioner's Application with respect to this claim.  See 28 U.S.C. 2254(d).

### B.   Constitutional Error Argument

The petitioner argues that even assuming *arguendo* the application of Judge Curry's pretrial rulings was not structural error, the rulings were erroneous and violated the Constitution. Specifically, the petitioner challenges (1) the admission of his prior criminal convictions from 1978; (2) the denial of defense counsel's motion to withdraw; and (3) the denial of petitioner's motion to test, drill, or sample the victims' property.

### 1.   Admission of Prior Criminal Convictions

The petitioner claims that Judge Curry violated his due process rights when he allowed admission of evidence regarding prior criminal convictions.  The petitioner presented this claim as a due process violation to the state appellate court, *Answer*, Exhibit B, p. 10, but did not present it as a constitutional matter to the state supreme court.[4]  Id. at Exhibit F, pp. 8-9.  Therefore, this portion of Claim One is not exhausted.  In addition, for the reasons set forth in my analysis of Claim Three, this claim is procedurally barred and improper for habeas review.

### 2.   Denial of Defense Counsel's Motion to Withdraw

_____

[4]Indeed, in his brief to the state supreme court , the only case cited by the petitioner is People v. Pratt, 759 P.2d 676,682 (Colo. 1988).  Id. at p.9.  Pratt examines the admission of evidence under Rule 608 of the Colorado Rules of Evidence.

The petitioner asserts that Judge Curry denied Mr. Rolfe's motion to withdraw as counsel in violation of the petitioner's rights under the Sixth Amendment as made applicable to the states through the Fourteenth Amendment. *Application*, p. 5E. Mr. Rolfe requested to withdraw as the petitioner's attorney on the basis that the petitioner missed appointments with him and was not making himself available to aid in the preparation of the case, which involved over 5,000 pages of discovery. Id.; *Answer*, Exhibit B, p. 10. The petitioner claims that the court was required to substitute his counsel because a complete breakdown in communication existed between himself and Mr. Rolfe. Id.

"To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987) (internal quotations and citations omitted). See also United States v. Johnson, 961 F.2d 1488, 1490 (10th Cir. 1992) (motion to withdraw on basis that defendant believed his attorney was intimidated by the court and could not continue to act zealously in his defense denied because defendant did not show a conflict of interest, a breakdown in communication, or an irreconcilable conflict).

Where a complete breakdown in communication is alleged to have rendered counsel's representation ineffective under the Sixth Amendment, the reviewing court is to consider four factors: (1) whether there was a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) whether the defendant substantially and unjustifiably contributed to the

11

breakdown in communication.  Romero v. Furlong, 215 F.3d 1107, 1113 (10th Cir.2000)

(citations omitted).

The state appellate court denied Mr. Rolfe's motion to withdraw on the following bases:

> The trial court should grant court-appointed counsel's motion to
> withdraw only if it is satisfied that counsel cannot give the
> defendant effective representation because of deterioration of the
> attorney-client relationship. We review a denial of appointed
> counsel's motion to withdraw for abuse of discretion. People v.
> Schultheis, 638 P.2d 8 (Colo.1981).
>
> Here, defense counsel asserted at the hearing on the motion to
> withdraw that he could not be effective on behalf of defendant
> because defendant was not cooperating in the preparation of the
> defense.  Defendant, however, stated that he was entirely satisfied
> with his attorney's performance and did not want him to withdraw.
> Neither defendant nor his attorney represented that there was any
> deterioration in the attorney-client relationship, other than the
> alleged non-cooperation, or that there was any conflict between
> them.  The court properly noted that, under the circumstances,
> defendant's alleged non-cooperation in preparing his own defense
> was not something that could be cured by the substitution of new
> counsel.

People v. Collie, 995 P.2d at 770.

The state appellate court did not address the Sixth Amendment when analyzing this claim.

Nevertheless, I "owe deference to the state court's *result*, even if its reasoning is not expressly

stated." Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the

state court's summary decision unless [my] independent review of the record and pertinent federal

law persuades [me] that its result contravenes or unreasonably applies clearly established federal

law, or is based on an unreasonable determination of the facts in light of the evidence presented."

Id. at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of

the petitioner's claims."  Id.

Under Romero, I do not find any Sixth Amendment basis requiring the court to grant

Mr. Rolfe's request to withdraw.  The trial court held a hearing to inquire into the matter; the petitioner testified that he was "entirely satisfied" with Mr. Rolfe's performance and that he did not want Mr. Rolfe to withdraw; and the only alleged deterioration in the attorney-client relationship was non-cooperation by the petitioner.  The state appellate court's determination of the petitioner's first claim is not contrary to, nor does it involve an unreasonable application of federal law.  Further, I find no evidence that the state appellate court's resolution of this claim involved an unreasonable determination of the facts.  As a result, this claim should be denied.  See 28 U.S.C. § 2254(d).

The petitioner further asserts that Judge Curry stated "I'm very hesitant to allow Mr. Rolfe to withdraw because Mr. Collie needs to be represented, and he certainly can't represent himself." *Application*, p. 5E.  The petitioner argues that his Sixth Amendment rights were violated by Judge Curry's remark and by Judge Curry's failure to advise him of his right to self-representation.

A criminal defendant enjoys a constitutional right to waive counsel and represent himself at trial, Faretta v. California, 422 U.S. 806, 817 (1975), but the waiver of counsel must be made knowingly and intelligently.  Id. at 835 (internal quotation and citation omitted).  To invoke the right of self-representation, the defendant must: (1) clearly and unequivocally assert his intention to represent himself; (2) knowingly and intelligently relinquish the benefits of representation by counsel; and (3) make this assertion in a timely fashion.  United States v. Akers, 215 F.3d 1089, 1097 (10th Cir.2000).  "The denial of a defendant's right of self-representation is not amenable to harmless error analysis.  The right is either respected or denied; its deprivation cannot be harmless." Id. at 1096.

13

The state appellate court found that Judge Curry's comment did not give rise to a Sixth Amendment violation:

> Defendant further contends that the trial court deprived him of his constitutional right to self-representation by this statement at the hearing on the motion to withdraw:
>
>> We're going nowhere at this stage because [defense counsel] can't be prepared because [defendant] is not working with him.... But I'm very hesitant to allow [defense counsel] to withdraw because [defendant] needs to be represented, and he certainly can't represent himself.
>
> We are not persuaded that, without more, this comment can be construed as anything other than an expression that the case was a complicated one involving more than 4,000 pages of discovery, numerous exhibits, and complex legal issues, along with the court's understandable frustration with the delays preceding that hearing. Especially in light of the fact that defendant did not want his attorney to withdraw and was planning to hire private counsel if the motion was granted, we are not persuaded that the trial court abrogated defendant's constitutional right to self-representation.

The petitioner does not claim, and the record does not demonstrate, that the petitioner ever asserted any clear and unequivocal intention to represent himself. Therefore, under Akers, Judge Curry did not have any obligation to inform the petitioner of his right to self-representation. The petitioner does not attempt to rebut by clear and convincing evidence any factual determinations made by the state court. Consequently, the state court's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in an unreasonable determination of the facts presented at trial. I find no basis upon which to grant the petitioner's Application with respect to this claim. See 28 U.S.C. § 2254(d).

14

### 3.   Denial of Petitioner's Motion to Test, Drill, or Sample the Victims' Property

The petitioner asserts that Judge Curry's denial of his request to test, drill, or sample the victims' property deprived him of his Sixth Amendment right to present evidence in his own defense.  A criminal defendant's right to present evidence in his own defense is rooted in the Sixth Amendment's compulsory process clause and the Fifth and Fourteenth Amendments' guarantee of due process.  Richmond v. Embry, 122 F.3d 866, 871 (10th Cir. 1997).  The right to present a defense, however, is not without limits:

> The defendant's presentation of evidence is constrained by the twin prongs of relevancy and materiality.  Simply stated, a criminal defendant does not have a constitutional right to present evidence that is not relevant and not material to his defense. See id. (citing Washington v. Texas, 388 U.S. 14, 16, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); Roviaro v. United States, 353 U.S. 53, 63, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); United States v. Begay, 937 F.2d 515, 523 (10th Cir.1991)).

United States v. Solomon, 399 F.3d 1231, 1239 (10th Cir. 2005).

The state appellate court upheld the denial of petitioner's motion as follows:

> Under the Sixth Amendment, a defendant has a due process right to present evidence in his defense. The right is not absolute, however, and the trial court must use its authority to accommodate all legitimate interests in the criminal trial process. Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); People v. Lanari, 926 P.2d 116 (Colo. App.1996).
>
> A violation of the right to present evidence occurs only when the defendant can make a plausible showing that the excluded evidence was relevant and material to his defense; it is not sufficient to show that it might have had some possible benefit. United States v. Valenzuela-Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); People v. Bell, 809 P.2d 1026 (Colo. App.1990).
>
> Here, defendant was permitted to go on the property of the victims to inspect, photograph, measure, and survey. The trial court noted that defendant had not made a showing that any testing, drilling,

15

soil sampling, or other investigation of the property that would require its destruction or alteration was likely to turn up any relevant evidence, especially because many or all of the homeowners had already performed remedial work that had altered the condition of the land and because of the admittedly minimal work done by the landscaping company.

Our review of the record reveals nothing to support defendant's contention that he was deprived of an opportunity to obtain evidence relevant and material to his defense. Rather, his argument is only that further testing and investigation might have had some possible benefit. Under these circumstances, defendant was not denied due process of law by the trial court's order. See United States v. Valenzuela-Bernal, supra; People v. Bell, supra.

People v. Collie, 995 P.2d at 771.

The appellate court upheld the trial court's denial of the petitioner's motion for permission to test, drill, or sample the victims' property because the petitioner had not made any showing of relevancy or materiality.   The state courts' resolution of the petitioner's motion was not contrary to, nor did it involve an unreasonable application of, federal law.  See Solomon, 399 F.3d at 1239. The petitioner offers no clear and convincing evidence to rebut the factual determinations of the state court.  Therefore, I find that the state courts' resolution of this issue resulted in a decision that was based on a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Consequently, I find no basis to grant the Application as to this claim.

### B.   Claim Two

Claim Two alleges that the trial judge, Judge Lawrence, denied the petitioner's motion to dismiss his counsel in violation of the Sixth Amendment. *Application*, pp. 6-6C.  The petitioner presented this claim as a matter of federal constitutional law to the state appellate court, Collie, 995 P.2d at 771-72, and to the state supreme court. *Answer*, Exhibit F, pp. 12-13 (arguing good cause for withdrawal under People v. Arguello, 772 P.2d 87 (Colo. 1989), which addresses a

16

criminal defendant's right to counsel under the Sixth Amendment of the United States

Constitution). Therefore, the petitioner has exhausted this claim in the state courts. I may grant

the Application as to this claim only if the adjudication of the claim (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding. 28 U.S.C. § 2254(d).

Several days after Judge Curry denied counsel's motion to withdraw, the petitioner moved

for dismissal of his counsel, Mr. Rolfe, on the basis that he could no longer depend on and trust

Rolfe due to the grievance filed against Rolfe and the fact that Rolfe had not divulged this fact to

him. *Application*, p. 6B. The petitioner stated to Judge Lawrence:

> We've had a lot of motions ruled on since this thing has been
> between Judge Curry and Mr. Rolfe. I don't know whether any of
> those were influenced in any way by the difference between them,
> but I think I need to go with an attorney that doesn't have this
> problem, that doesn't have any cloud hanging over him, one that I
> feel I can trust. I just want the chance to get the best defense I can
> possibly get to be proven innocent and to go on with my life and my
> family. I'm willing to waive my right to a speedy trial that I might
> have the best possible defense I can have under the circumstances
> and I don't believe Mr. Rolfe can be that.

*Answer*, Exhibit B, p. 13; *Application*, p. 6A.

Mr. Rolfe informed Judge Lawrence that the situation "has made open communication

between Mr. Collie and myself virtually impossible." *Answer*, Exhibit B, p. 14; *Application*, p.

6A. Rolfe further stated:

> I don't believe I can effectively represent him. Judge, this is eating
> into my life, just the situation with Judge Curry. I haven't been
> particularly effective at anything since last Wednesday and I hope

> the court can appreciate all that, but I don't believe I can represent
> Mr. Collie at this point.

Id.

Judge Lawrence determined that defense counsel's statements and the petitioner's lack of trust in his attorney did not demonstrate good cause to warrant dismissal of Rolfe. *Answer*, Exhibit B, p. 14; *Application*, p. 6B.

The following day, the petitioner informed the court that he had obtained a $20,000 loan to retain private counsel for trial and requested the dismissal of appointed counsel. Judge Lawrence denied the request. Id.

The state appellate court upheld the Judge Lawrence's denial of the petitioner's motion to dismiss Mr. Rolfe and the petitioner's request to continue the trial so he could retain his own counsel:

> Defendant further contends that the trial court erred when it denied his motion to dismiss his attorney and the attorney's second motion to withdraw. We disagree.
>
> An indigent defendant is entitled to effective representation by a competent attorney appointed by the court. Gideon v. Wainwright, supra. However, an indigent defendant may not demand any particular attorney. People v. Arguello, 772 P.2d 87 (Colo.1989). The right to appointed counsel ensures only competent representation, and does not necessarily include "a meaningful attorney-client relationship." Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617-1618, 75 L.Ed.2d 610, 621 (1983).
>
> When an indigent defendant asserts dissatisfaction with his or her court-appointed attorney, the trial court must inquire into the matter, and "[i]f the defendant can establish 'good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict,' the court is required to substitute new counsel." People v. Arguello, supra, 772 P.2d at 94.

18

When a defendant's request for new counsel comes "on the eve of trial," the trial court must also consider that, while the defendant's right to competent counsel is paramount, a "defendant should not be allowed to use a motion for substitution of counsel as a delay tactic." People v. Arguello, supra, 772 P.2d at 94.

Here, a hearing was held on the Friday before trial, which was set to commence the following Tuesday. During that hearing, the original trial judge recused himself from the case because of the possible conflict arising from the grievance he had filed against defendant's attorney. Consequently, defense counsel again sought to withdraw, this time because defendant had stated he wanted a new attorney "with a clean slate without a grievance." The original trial judge ruled that any apparent conflict would be resolved by his recusal and suggested that defense counsel provide legal authority if he continued to believe that withdrawal was warranted.

The following Monday, the day before trial was set to commence, the replacement judge considered the authorities presented by defense counsel and his argument that defendant was entitled to reject his court-appointed attorney because "open communication between [defendant] and myself [is] virtually impossible." The court also heard defendant's statement:

> I don't know the nature of the problem between [the original judge] and [defense counsel].... I have to have counsel that I believe I can depend on and can trust.

> I know that [defense counsel] is a very competent attorney. I have no doubt about that.

The replacement judge ruled that the conflict was between defense counsel and the original judge and that the recusal had resolved that conflict. The court found:

> [I]t doesn't appear in this case that there is in actuality a conflict as such. What there appears to be is some feeling on the part of [defendant] in terms of his relationship with [defense counsel], but frankly, it doesn't appear to me to be much different than I run into almost on a weekly basis in terms of clients represented by the public defender who are

objecting to the public defender representing them....
I don't find there is a conflict in this case that would
require termination of the representation based upon
the rules of professional conduct.

We accept the trial court's findings because they are supported in
the record.  See People v. Vigil, 955 P.2d 589 (Colo. App.1997).
In light of those findings, and particularly defendant's
acknowledgment that his attorney was "very competent," we find
no abuse of discretion in the trial court's ruling that no substitution
of counsel was necessary.  See People v. Arguello, supra.

The next morning, the day trial was set to begin, defendant again
sought to dismiss his court-appointed attorney, arguing that he was
no longer indigent because he had obtained a loan with which to
retain private counsel.  The trial court again denied the motion,
finding:

> The situation as presented today is that we are about
> to begin a trial that has been set for some period of
> time.  The case has been continued twice before. I
> notice that the Information in this case was originally
> [filed in 1995]. [It is] now some year and a half or
> more later and on the very morning of trial now we
> hear from the defendant that he wishes to hire
> private counsel....

> I don't think the court needs to reach the issue of his
> indigency status at this point in time.  There is no
> attorney present today moving to enter on behalf of
> [defendant] and even if there was, the issue then
> would be whether or not the Court should continue
> the trial.... [This is] an attempt to continue the trial
> so that he can get an attorney that he chooses.

> He has had a year and a half essentially to come up
> with private counsel and to do so on the morning of
> trial the Court finds to be unreasonable....

> [Defendant] requested the appointment of
> court-appointed counsel initially because of an
> indigency condition and there's been nothing
> presented to change that scenario and the Court

20

> would deny a request to continue the matter simply
> to get another attorney on the case on the morning
> of trial.
>
> We accept the trial court's findings because they are supported by
> evidence in the record.  See People v. Vigil, supra.  Based on those
> findings, as well as the findings of the previous day, we find no
> abuse of discretion in the trial court's ruling denying defendant's
> request for dismissal of counsel.

Collie, 995 P.2d at 771-73.

As to the petitioner's initial request that Judge Lawrence dismiss his attorney, a substitution of counsel is only warranted where the criminal defendant has shown good cause "such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict."  Padilla, 819 F.2d at 955.  Although Rolfe stated that the grievance situation had made open communication between he and the petitioner "virtually impossible," and although the petitioner expressed doubt as to whether he could trust Rolfe to give him the best defense possible, the petitioner also stated that--without doubt--he knew Rolfe was a very competent attorney.  Moreover, just days before the hearing before Judge Lawrence, the petitioner told Judge Curry that he was entirely satisfied with Rolfe's performance and that he did not want Rolfe to withdraw.  Under these circumstances, the state courts' decision did not run contrary to federal law.  Competent representation is exactly what the Sixth Amendment guarantees; it does not guarantee a meaningful relationship with counsel.  Morris v. Slappy, 461 U.S. 1, 14-15 (1983).

In addition, it cannot be said that the trial court violated the petitioner's Sixth Amendment right to counsel in not granting a continuance of the trial to honor the petitioner's request to dismiss Rolfe and allow him to retain private counsel.  The Sixth Amendment's guarantee of the right to counsel in criminal prosecutions includes the defendant's right to retain counsel of his

choice.  United States v, Collins, 920 F.2d 619, 625 (10th Cir. 1990).  "However, a defendant's

right to retain counsel of his choice is not absolute and may not be insisted upon in a manner that

will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of

their inherent powers to control the same."  Id. (internal quotations omitted) (citing United States

v. Panzardi Alvarez, 816 F.2d 813,  816 (1st Cir. 1987) for the holding that a court may refuse to

allow a defendant to substitute counsel on the eve of trial).  A defendant's request to retain

counsel may be denied if it would unreasonably delay proceedings.  Id. at 625.

> The Sixth Amendment to the Constitution guarantees that in all
> criminal prosecutions, the accused shall enjoy the right to have the
> Assistance of Counsel for his defense.  In United States v.
> Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564
> (1981), we observed that this right was designed to assure fairness
> in the adversary criminal process.  Realizing that an unaided layman
> may have little skill in arguing the law or in coping with an intricate
> procedural system, we have held that the Sixth Amendment secures
> the right to the assistance of counsel, by appointment if necessary,
> in a trial for any serious crime.  We have further recognized that the
> purpose of providing assistance of counsel is simply to ensure that
> criminal defendants receive a fair trial, and that in evaluating Sixth
> Amendment claims, the appropriate inquiry focuses on the
> adversarial process, not on the accused's relationship with his
> lawyer as such.  Thus, while the right to select and be represented
> by one's preferred attorney is comprehended by the Sixth
> Amendment, the essential aim of the Amendment is to guarantee an
> effective advocate for each criminal defendant rather than to ensure
> that a defendant will inexorably be represented by the lawyer whom
> he prefers.

Wheat v. United States, 486 U.S. 153, 158-59 (1988) (internal quotations and citations omitted).

Here, the request to retain private counsel was not presented to the court until the day of

trial; the petitioner had not retained private counsel in the 1½ year period between the time the

Information was filed and the date of trial; and no attorney other than court appointed counsel

entered or sought to enter an appearance on behalf of the petitioner.  The petitioner had requested

22

counsel initially because of his indigent status and had not presented any evidence to change this status.  Under Collins and Wheat, the trial court's refusal to grant a continuance was justified:

> Trial judges necessarily require a great deal of latitude in scheduling trials.  Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.  Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.

Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (internal quotations and citations omitted).  Courts must balance a criminal defendant's right to retain counsel of choice against the orderly administration of justice.  Collins, 920 F.2d at 626.

The appellate court's resolution of this claim was not contrary to established federal law, nor did it result in an unreasonable determination of the facts presented in the state court proceeding.  Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The petitioner does not attempt to rebut any factual determinations made by the state court.  Therefore, I find no basis upon which to grant the petitioner's Application with regard to this claim.  28 U.S.C. § 2254(d).

## C.  Claim Three

Claim Three alleges that the prosecution failed to prove the commission of a crime beyond a reasonable doubt.  The respondents assert that this claim has not been exhausted in the state courts.  *Answer*, pp. 18-19.

The petitioner presented this claim to the state appellate court as an issue of federal constitutional law.  *Answer*, Exhibit B, pp. 15-17.  He did not, however, present this claim to the state supreme court as a federal constitutional issue.  Id. at Exhibit F, pp. 16-17.

Comity is the rationale underlying the exhaustion requirement--state courts must be provided with the first opportunity to pass on alleged defects in their criminal proceedings leading to the conviction at issue. Rose v. Lundy, 455 U.S. 509, 518 (1982). In order to "encourage state prisoners to seek full relief first from the state courts," the exhaustion requirement must be "rigorously enforced." Id. Exhaustion of state remedies requires that a petitioner raise in the state courts both the factual and legal bases of his habeas claims. Gibson v. Scheidemantel, 805 F.2d 135, 138 (3rd Cir. 1986). Consequently,

> [i]t is not enough that the petitioner presents to the state court the facts upon which a federal claim is based. The claim must be substantially equivalent to that litigated in the state court. Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

O'Halloran v. Ryan, 835 F.2d 506, 508 (3rd Cir. 1987) (quotations and citations omitted).

I find that the petitioner's allegations and supporting evidence did not offer the Colorado Supreme Court a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." See Thomas v. Gibson, No. 99-5030, 2000 WL 986587 at *13 (10th Cir. July 18, 2000). Because the substance of the petitioner's federal habeas corpus claim was not fairly presented to the state supreme court, see Picard, 404 U.S. at 278, this claim has not been exhausted.[5]

_____

[5]The respondents direct the Court's attention to Rule 51.1, C.A.P., which became effective May 18, 2006. Rule 51.1 provides the following:

> (a) Exhaustion of Remedies. In all appeals from criminal convictions or post-conviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has

When a petitioner fails to exhaust available state remedies, the federal court must determine whether the petitioner would be able to raise the claim in the state court. <u>Demarest</u>, 130 F.3d at 939. If the claim would be procedurally barred in the state court, the claim is procedurally defaulted for purposes of habeas relief. <u>Coleman</u>, 501 U.S. at 735 n.1.

This claim is procedurally barred from state court consideration because a determination of an issue on direct appeal precludes review of that same issue on a motion for post-conviction relief. Colo. R. Crim. P. 35(c); <u>DePineda v. Price</u>, 915 P.2d 1278, 1281 (Colo. 1996). Because the petitioner already presented this claim on direct appeal, he is prohibited from asserting it again.

I may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or

---

been denied, the litigant shall be deemed to have exhausted all available state remedies.

(b) Savings Clause. If a litigant's petition for federal habeas corpus is dismissed or denied for failure to exhaust state remedies based on a decision that this rule is ineffective, the litigant shall have 45 days from the date of such dismissal or denial within which to file a motion to recall the mandate together with a writ of certiorari presenting any claim of error not previously presented in reliance on this rule.

The respondents argue that the petitioner was required to exhaust his claims in the Colorado Supreme Court regardless of the language of Rule 51.1. The petitioner has not raised Rule 51.1 as an argument against exhaustion in the state supreme court. Even if he had, the argument fails because the rule was not in effect at the time the petitioner's claims were pending in the state courts. *Answer*, Exhibits G and R. Therefore, exhaustion at the state supreme court level was a remedy "available" to the petitioner for purposes of 28 U.S.C. § 2254(b)(1). <u>See</u> <u>Wenger v. Frank</u>, 266 F.3d 218 (3d Cir. 2001).

(2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice. English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993). Because this claim was already presented to the state court on direct appeal, and is barred by the doctrine of res judicata, it has been defaulted on an independent and adequate ground. See Lacey v. Ferguson, 185 F.3d 874, 1999 WL 436453, at *2 (10th Cir.).

The petitioner has not argued cause and prejudice or fundamental miscarriage of justice. Because the claim is procedurally defaulted, and because the petitioner did not demonstrate cause and prejudice or a fundamental miscarriage of justice, this claim is not proper for consideration on an application for writ of habeas corpus.

### D.   Claim Four

Claim Four alleges that the state committed prosecutorial misconduct during closing argument. The respondents assert that this claim has not been exhausted in the state courts. *Answer*, pp. 18-19.

The petitioner presented this claim to the state appellate court as a violation of his Sixth Amendment right to trial by an impartial jury; his Fifth Amendment right to a fair trial; and his Sixth Amendment right to confront witnesses. *Answer*, Exhibit B, pp. 18-21. The petitioner presented this claim to the state supreme court solely as a violation of his Fifth Amendment right to a fair trial. Id. at Exhibit F, pp. 13-15. Thus, this claim is not exhausted to the extent it alleges violations of the petitioner's Sixth Amendment right to trial by an impartial jury and his Sixth Amendment right to confront witnesses. In addition, for the reasons set forth in my analysis of

Claim Three, the allegations in Claim Four of Sixth Amendment violations are procedurally barred and improper for habeas review.

Insofar as Claim Four asserts a violation of the petitioner's Fifth Amendment right to a fair trial, "[o]rdinarily, a prosecutor's misconduct will require reversal of a state court conviction only where the remark sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process." Duckett v. Mullin, 306 F.3d 982, 988 (10th Cir. 2002).

The state appellate court did not reach the merits of the petitioner's federal constitutional claims.  Instead, the state appellate court reviewed the claims for plain error because the petitioner did not object to any of the alleged misconduct at trial:

> Alleged prosecutorial misconduct that is not objected to at trial is reviewed only for plain error.  Harris v. People, 888 P.2d 259 (Colo.1995).  "Unless a prosecutor's misconduct is flagrant or 'glaringly or tremendously' improper, it is not plain error...." People v. Constant, 645 P.2d 843, 847 (Colo.1982).
>
> Defendant complains of five specific instances of alleged misconduct during the prosecution's closing arguments but did not object to any of them at trial. Our review of the record reveals that, while the prosecutor did commit some minor misconduct in some of the instances complained of, none of the misconduct standing alone, nor all of it in combination, was flagrant or glaringly or tremendously improper, and thus it does not constitute plain error.

Collie, 996 P.2d at 775.

Where a state court denies relief for a federal claim on plain error review "because of the petitioner's failure to satisfy some independent state law predicate," that predicate serves as an independent state ground for the decision, which results in a procedural bar at the federal habeas level.  Cargle v. Mullin, 317 F.3d 1196, 1206 (10th Cir. 2003).  Because this claim is procedurally barred, I may not consider it unless the petitioner can either (1) show cause for the default and

actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure

of this court to consider the claims will result in a fundamental miscarriage of justice. English v.

Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v.

Young, 11 F.3d 1518, 1521 (10th Cir.1993). The petitioner has not argued cause and prejudice

or fundamental miscarriage of justice. Consequently, this claim is not proper for habeas review.

### E. Claim Five

Claim Five alleges that the jury was erroneously instructed on the elements of theft and

that trial counsel was ineffective for failing to object to the instruction. The respondents assert

that this claim has not been exhausted in the state courts. *Answer*, p. 18.

The petitioner did not present to the state courts a federal constitutional claim for

ineffective assistance of counsel based on failure to object to the instruction. Id. at Exhibits B, F,

H, M, O, and Q. Therefore, this claim has not been exhausted in the state courts. Moreover, this

claim is procedurally defaulted. The petitioner raised an ineffective assistance of counsel claim in

his postconviction motion to the state courts,[6] id. at Exhibits H, M, O, and Q, and he would be

prohibited from raising another claim for ineffective assistance of counsel in a successive post-

conviction motion. See People v. Rodriguez, 914 P.2d 230, 249-50 (Colo. 1996); People v.

Martinez, 36 P.3d 201, 205 (Colo. App. 2001). Thus, the petitioner's claim for ineffective

assistance of counsel is procedurally barred.

The petitioner presented the structural error claim to both the state appellate court and the

state supreme court as a matter of a violation of the United States Constitution. *Answer*, Exhibit

---

[6]The petitioner does not challenge the state court's disposition of the ineffective assistance of
counsel claim.

B, p. 21 (citing People v. Vance, 933 P.2d 576 (Colo. 1997) and People v. Price, 969 P.2d 766 (Colo. App. 1998)); Exhibit F, p. 18 (citing Price).  However, the state appellate court did not reach the federal constitutional analysis regarding structural error because the petitioner did not object to the jury instruction at trial.  Instead, the court performed a plain error analysis.  As discussed in Claim Four, when a state court denies relief for a federal claim on plain error review "because of the petitioner's failure to satisfy some independent state law predicate," that predicate serves as an independent state ground for the decision, which results in a procedural bar at the federal habeas level.  Cargle v. Mullin, 317 F.3d 1196, 1206 (10th Cir. 2003).

I may not consider a claim that is procedurally barred unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice.  English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993).  The petitioner has not argued cause and prejudice or fundamental miscarriage of justice.  Consequently, this claim is not proper for consideration on an application for writ of habeas corpus.

### F.   Claim Six

Claim Six alleges that the petitioner's 48 year sentence violates the Eighth Amendment's guarantee against cruel and unusual punishment.  The defendants concede that this claim has been exhausted.[7]  Therefore, I may grant the Application as to this claim only if the adjudication of the

---

[7]The petitioner exhausted this claim in his postconviction proceedings.  *Answer*, Exhibits H, M, and Q.

claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

In his motion for postconviction relief, the petitioner argued that his 48 year sentence was disproportionate to the crime for which he was convicted.  *Answer*, Exhibit I.  The postconviction court agreed with the petitioner and reduced his sentence to 20 years.  Id.  The appellate court vacated the 20 year sentence and remanded the case for reinstatement of the original sentence.  Id. at Exhibit P.

The Eighth Amendment prohibits a sentence that is disproportionate to the crime for which the defendant has been convicted.  Hawkins v. Hargett, 200 F.3d 1279, 1281 (10th Cir. 1999) (citing Weems v. United States, 217 U.S. 349, 367 (1910).  However, the proportionality guarantee is a narrow one.  Id. at 1282.  In noncapital cases, "successful challenges to the proportionality of particular sentences should be exceedingly rare."  Id. at 1281 (quoting Rummel v. Estelle, 445 U.S. 263, 272 (1980).

The Tenth Circuit Court of Appeals has set forth the analysis a reviewing court must undertake when faced with a proportionality challenge:

> In Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court enunciated a three-pronged analysis for reviewing Eighth Amendment proportionality challenges.  The test instructed courts to examine: (1) the gravity of the offense and harshness of the penalty; (2) sentences imposed on other criminals in the jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions.  We have ruled that Justice Kennedy's plurality opinion in Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) narrowed Solem and sets forth the

applicable Eighth Amendment test.  Hawkins v. Hargett, 200 F.3d
1279, 1282 (10th Cir.1999).  Under this test, we first look only at
the relation of the sentence to [the] crimes.  If we find no "gross
disproportionality," we do not proceed to a comparative analysis.

United States v. Jones, 213 F.3d 1253, 1261 (10th Cir. 2000).

In determining gross disproportionality, the reviewing court should consider various

factors, including the seriousness of the crime, the fit between the sentence and the crime,

eligibility for parole, and the legislative determination of the appropriate sentence range.  Hawkins

v. Hargett, 200 F.3d 1279, 1284-85 (10th Cir.1999) (acknowledging that several courts have held

that eligibility for parole should foreclose proportionality review altogether).   The court must

"grant substantial deference to the broad authority that legislatures necessarily possess in

determining the types and limits of punishments for crimes, as well as to the discretion that trial

courts possess in sentencing convicted criminals."  Jones, 213 F.3d at 1262.  "Courts must also be

mindful that legislatures may punish recidivists more severely than first-time offenders."  United

States v. Gurule, 461 F.3d 1238, 1247 (10th Cir. 2006) ( internal quotations and citation omitted).

Here, the state appellate court determined that the initial 48 year sentence was not

disproportionate to the crime for which the petitioner was sentenced.  *Answer*, Exhibit P, pp. 2-8.

The court stated:

Under § 18-1.3-801(2), C.R.S. 20004,

Every person convicted . . . of any felony, who has
been three times previously convicted . . . of a felony
. . . shall be punished for the felony offense of which
such person is convicted by imprisonment in the
department of corrections for a term of four times
the maximum of the presumptive range pursuant to

31

section 18-1.3-401 for the class of felony of which
such person is convicted.

Under § 18-1.3-401(1)(a)(V)(A), C.R.S. 2004, the maximum
sentence in the presumptive range for a class three felony is twelve
years plus five years of mandatory parole.

\* \* \*

Outside the capital punishment context, successful challenges to the
proportionality of a particular sentence are extremely rare, thereby
preserving the primacy of the General Assembly in crafting
sentencing schemes.

The first <u>Solem</u> criterion is whether the underlying offenses are so
lacking in gravity and seriousness that the inference of sentence
disproportionality is raised. . . .

\* \* \*

Here, the defendant's conviction for theft, a class three felony,
triggered his adjudication as an habitual criminal.  The crime of
theft constitutes a serious crime for proportionality purposes.  Theft
has been treated as a serious felony for proportionality purposes
when it is one of a variety of prior felony offenses.

Here, the triggering theft charge alleged that defendant "did
unlawfully, feloniously and knowingly commit the crime of theft by
unlawfully taking a thing of value, to wit: Cash, U.S. Currency,
Services, Merchandise and Property with the value of fifteen
thousand dollars or more" from a large number of victims.

At the Crim. P. 35(c) hearing, defendant's counsel stated that
defendant's crimes were all theft related and that witnesses testified
in the underlying proceedings that defendant

would come to their house and bid a job for
landscaping, that he would receive one-third of the
down payment, and then receive the second third
once he began construction, and then the final third
after the job was complete.  And there were
numerous witnesses who testified at trial, and their
testimony . . . tended to establish, that after
[defendant] got his second third of the payment, the
job was never completed.  <u>See</u> <u>People v. Collie</u>,
<u>supra</u>, 995 P.2d at 768 (defendant induced
homeowners to enter into contracts with his son's

32

landscaping business and after collecting an initial deposit and, in most instances, a progress payment upon completion of soil preparation work, the remainder of the work was never completed).

Defendant's prior felony convictions, as explained by the postconviction court, were for "similar theft transactions." Defendant's prior convictions consisted of theft, fraud by check, theft over $200, and theft over $10,000.  Defendant did not contest these prior felony convictions and entered guilty pleas to the habitual counts.

The postconviction court considered defendant's triggering conviction as "theft over $10,000" when the verdict stated "THEFT, fifteen thousand dollars or more."  It also found that "the average sentence for defendants convicted of . . . nonviolent class 3 felony . . . for the years of 1997, 2000 and 2002" was 7.9 years in Colorado.  However, neither the postconviction court nor the briefs on appeal provide us with evidence in the record to support this finding.  The court also stated that at the time of sentencing in 1997, defendant was sixty-five years of age.  However, a defendant's age should not be considered in determining whether a sentence is disproportionate under the Eighth Amendment.  Finally, the record reflects that defendant is eligible for parole.

After considering all the objective criteria, we conclude that defendant's crime is serious, the sentence originally imposed is within the range provided by statute, and that sentence does not violate the Eighth Amendment.

*Answer*, Exhibit P, pp. 3-8 (citations omitted).

In finding that the petitioner's 48 year sentence was not grossly disproportionate to his crimes, the state appellate court determined that the petitioner's crime was serious because it involved a large amount of money and caused financial loss to a large number of victims; the petitioner's prior felony convictions were for similar theft transactions; the petitioner's sentence was within the range provided by statute; and the petitioner was eligible for parole.  In addition, under the circumstances in this case, the court correctly determined that the petitioner's age is not

relevant to the proportionality determination.  Hargett, 200 F.3d at 1284 (holding that age is a

relevant factor to consider in a proportionality analysis only as it is relevant to culpability, such as

when the defendant is a minor).  I find that the state appellate court's determination of this matter

is consistent with clearly established federal law and its decision was based on a reasonable

determination of the facts presented.  Therefore, I find no basis upon which to grant the

petitioner's Application with respect to this claim.  See 28 U.S.C. 2254(d).

### IV.   CONCLUSION

For all of these reasons, I respectfully RECOMMEND that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and

Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file

specific, written objections.  A party's failure to serve and file specific, written objections waives

de novo review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A

party's objections to this recommendation must be both timely and specific to preserve an issue

for de novo review by the district court or for appellate review.  United States v. One Parcel of

Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated July 9, 2007.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge